Can we hear from the parties now in Yujin Lee v. Sessions? Good morning, Your Honors. My name is Thomas Barra. I represent the petitioner here, Ms. Yujin Lee. Ms. Lee is a Falun Gong practitioner, and she's a native of the People's Republic of China. In China, Falun Gong practitioners are imprisoned. It is evidence they've been beaten, sterilized, killed. Some have disappeared while in custody. Others has come forward that they were victims of organ harvesting and various other methods of torture and abuse. My client, in fact, the Chinese government has formed a 610 office, which basically is a division that is, sole purpose is to eradicate Falun Gong. Now, they have labeled it as a cult, and it is clearly illegal in that country. Now, where we stand here is my client has petitioned for, well, she has applied for asylum, withholding removal and protection under the Convention Against Torture. She applied before an immigration judge, was denied, and the BIA has also denied her appeal. That's why we're here before your honors. Now, my client did not practice Falun Gong when she was in China. In fact, she has no claim of any past persecution. She was clear about that. Therefore, as the court knows, it's a sort of different standard. She has to show, well, first of all, well-founded fear of future persecution. And the courts have held that that basically isn't, that if you can show that there's a practice or pattern of persecution in China of Falun Gong practitioners. And the second part is that Ms. Lee is a member of that group. I don't believe any of that has been disputed. That's not really an issue, I believe, in this appeal here. Subsequently, we have to show some showing that the Chinese government is either aware of her practice or could likely become aware. Now, the burden of proof for asylum is that there's a reasonable possibility that they could become aware. And we submit, your honors, that we have put forth that before the immigration judge. My client has also become a political activist. She was involved in many protests which were recorded, which were on TV. They were also documented by the Epoch Times newspaper. They're on their websites, pictures of her. In fact, her witness at the immigration hearing, it even indicated that she saw her on television there. Now, the immigration judge and the department has indicated that that brief showing is not enough, that her brief appearance on TV is not enough to show that she would, that they could become aware, or that they are aware of her practice. But I would submit that nowadays, especially with facial recognition, I mean, she was on TV. Nobody had to have been watching right at that moment. But now you have a video recording of her. We have, as indicated, these are pictures from the newspaper that are on their website. With the facial recognition technology today, I believe it's very reasonable to say that they could very easily become aware if they are not already aware. This is a government that routinely monitors their own people as far as websites that they use and emails. Also, there was an incident in 2008 in Flushing, in which the Chinese delegate had paid, he admitted, they caught him on tape, that he admitted that he had paid people to beat up and to attack the Falun Gong practitioners during one of these protests. So I would say it's almost unreasonable to assume that they are not even, that they are not monitoring these protests, and monitoring what the Falun Gong practitioners are doing in certain places other than China. It's still an assumption though, right? You didn't put in any evidence of anyone whose activities were monitored and as a result encountered difficulties in China, right? I mean, there's no evidence of anyone whose activities were monitored in the United States, went back to China, and then encountered difficulties. We have nothing documented of that, which is unfortunately always an issue with these, especially dealing with a government like this, there are people that go back, and as I said, when they're imprisoned. Well, except we don't have any evidence of that, right? I mean, you're saying that when they go back, that's what would happen. I'm asking this because our court has recognized that in these very difficult situations of people who want to stay in the United States, that it's sometimes difficult to discern genuine claims when it's easy enough, once you're in the United States, to change your religion, or engage in a political protest, or whatever. And then actually get yourself photographed, because you want to be able to claim that if you were returned to China, now there's a photograph of you out there. That's true, Your Honor. So my question to you is, what is it about the IJ's ruling rejecting your client's view that she would be individually targeted that is error here? Well, I believe that since the standard is so low that there's a reasonable possibility, that's the burden of proof on the asylum, that she just, I believe it's either an abuse of her discretion, but any reasonable adjudicator would be compelled to say that there's a reasonable possibility. And we're talking about, as the court has noted, 10% could be a reasonable possibility. Right, well now that's one way you can prove the future fear. The other is pattern or practice. What's your argument on that, if anything? That they have, certainly that there's been documented evidence that they have a pattern and practice of persecution in China. What's the error, though, by the agency? Well, the error by the agency, Your Honor, is that they basically just dismissed- I ask this because we've upheld denials in Falun Gong claim cases. And if there's a pattern and practice, you would think everybody who genuinely practiced Falun Gong would have a claim, and we don't recognize that. So what's the error here? Well, the error here is that, well, as the court had indicated, as Your Honor has indicated, one, it's hard to basically look into whether or not how genuine the practice is or anything along that line. However, I would- That wasn't an issue with your client, that the IJ didn't reject it, but- No. Yes, yes, so they did acknowledge that she was, in fact, a practitioner. I feel that the error here, and I'm sorry, I know I'm running out of time here. The error here was that because of her publicized activities, that it is very reasonable that she will be singled out. Because when she goes back, if she were to get deported, she has to go back, she has to address the fact that she left the country illegally, she has to pay a fine. They will be looking into what her activities were when she was abroad. This is, and I feel that the IJ just dismissed any sort of, just dismissed that as even a reasonable possibility. So is that your only error, that they didn't consider her being singled out? You're not arguing any error with respect to the pattern of practice? Well, the pattern of practice, I believe that we have shown that there is a pattern of practice of persecution of Falun Gong practitioners. All right, let's hear from the government. You want to reserve two minutes? Yes, Your Honor. All right. Thank you. Good morning, may it please the court. Russell Verby, on behalf of the Attorney General. As counsel discussed, the predicate issue here is whether there is evidence that the Chinese government is aware or likely to become aware of the protected characteristic. And on this point, Ms. Lee relies on three pieces of evidence. First, we have a letter from her husband. And what motivated the husband to visit the police station, we're not exactly sure because we have two different stories. In the asylum application, Ms. Lee said that she asked her husband to go to the police station and make inquiries. However, when she testified in front of the immigration judge, she said that her husband did this of his own accord and that she specifically denied sending him to the police station to ask any questions. And you add to this that there's some dispute between Ms. Lee's testimony and what the letter said with regard to the level of punishment she might face. On top of that, the letter's unsworn, there's no proof of its origin or its provenance, and it comes from an interested party. So the immigration judge properly gave it lessened weight. The next thing we have is the pieces of evidence, the photographs, and the brief appearance on television program. For this evidence to work, the court really has to first speculate that the Chinese government will see the pictures on the television program. And then the court has to speculate the Chinese government is going to attempt to identify the petitioner and actually succeed. And I'll reiterate that while there is, we talk about facial recognition and things along those lines. We have no evidence in the record that the Chinese government is using facial recognition technology to do this. Then the court has to speculate that the government will decide to punish Ms. Lee and that that punishment is going to rise to the level of persecution. That is a long chain of speculation. That's not substantial evidence. And so under the standard that's applicable in these proceedings, the agency's decision is supported by substantial evidence and the petitioner is entitled to neither relief nor protection. You agree that under this court's precedent, there are two ways that the petitioner can gain relief, one of which is to establish a pattern or practice of persecution of similarly situated persons, is that correct? Yes sir, you can be singled out or you can do pattern practice and that you identify with that group. But I think if you read YC very carefully, the predicate question is there's got to be some awareness or reasonable chance that the government will become aware to get you into the group even that would be persecuted. So I think we have a predicate question before we even get to the other issues. And did the IJ here consider the pattern of practice arguments in rendering a decision? The IJ didn't get there because this stopped at the awareness part of the analysis. Why would there be a second step if awareness, the reasonable possibility that she would be singled out is enough to get you relief? It sounds like you're saying that step one. Well, step one, you can go both ways around. Obviously, you can be singled out and that obviously involves awareness. But you actually have to place yourself inside of the group and show that when you're in the second, if you go into the second way that there's pattern and practice, that you actually are going to be placed at risk. And that individes some individualized risk. And that's what we don't have here. We're not sure. I have a question on that front, whether she intends to practice Falun Gong in China? Yes, Your Honor. That would be a big part of it. Did any of that get considered at the IJ level? I'm just asking whether it is part of the record. I understand that we've not always granted relief in these cases by any means. Yes, Your Honor. I'm not sure whether that question was actually asked. Well, let me ask you then, if that were to be our concern, whether the second prong of analysis was considered by the IJ, whatever conclusion he or she would come to, what's your response to why we wouldn't remand to be sure of that? Well, if the court reads the judge's decision and determines that the judge didn't adequately reach that issue, obviously under Ventura, it needs to go back for a remand. This judge, the analysis ended with respect, basically awareness, because that's where this case was going. This petitioner set up her claim to say that I am going to be singled out. By going to the police and all those things, she was looking at not necessarily a pattern and practice claim. But she was more saying, I'm going to be singled out. I am an individual practitioner. But that just wasn't there. All right, and counsel's arguments this morning focused on that too. So are you saying that the IJ does not have to reach the second argument where it's not the basis for the petition? Sure, Your Honor. If the petitioner isn't following that particular route, then the immigration judge doesn't have to get there. And what's your authority for the proposition that awareness is a threshold requirement for the pattern or practice prong?  All right, I mean, in Hong Sheng Len, the court says that the second means is by proving the existence of a pattern or practice of persecution of persons similarly situated to the applicant and establishing his or her own inclusion in an identification with such a group. That doesn't seem to suggest that awareness is a requirement. It would be sufficient to establish that she's within the group, which I don't think there's a dispute here, and that there's a pattern or practice of persecuting members of that group. True, Your Honor, but I think on the next step is when it's identification, also it's personal identification, and that you are going to be at some level of risk. We don't know in this case if this person is going to practice when she gets back there. So we can't automatically say just because you identify means you fall into the group that there's a pattern of practice and you are then at sufficient risk. I think there's a little bit of a leap there being made without a little bit more of a link in the chain. You may not have it conveniently there, but do you have language from the opinion you're relying on to support? From YC, Your Honor, I don't have the exact quote. My apologies. Your adversary's going to get a few minutes in rebuttal. Do you have a copy of the case with you? On with me? No, Your Honor, I don't.  Mr. Barrett. Okay, thank you, Your Honor. Yes, I, at the hearing level, they did address more the issue of whether or not she would be singled out. That's basically why we were addressing that. However- You made an argument because I asked you and you kept reverting to the single out concern that you have. That, well, that's correct, Your Honor. I felt that we have established that there was, that she did have a well-founded fear of future persecution with regard to the pattern of practice. That was with the background material, with the information that was submitted, and how I started even my address here when I discussed how the people- What's your response to the government's view that there has to be an awareness? You have to at least show awareness of her being a Falun Gong member. And then you get to all of this. They say that that's a preliminary standard you have to satisfy. Well, that is not something that the court of the Second Circuit, I believe, has held. I'm not sure about the Board of Immigration Appeals, I would like to, that case which counsel's referring to. However, this, as the court had noted, we have the Hong Shing Ling case. We have even Mogurabi, which discussed something along that line, Your Honor. But it's basically that my client was, when they had the hearings, they did address whether or not she was a Falun Gong practitioner. They addressed whether or not, at least the submissions addressed whether or not she was, whether there was a practice, a pattern of practice of this persecution of Falun Gong practitioners. Whether or not they, I don't believe they asked if she would continue it, but she did indicate that she feels better with it, and that she's healthy, and she likes to, and she does plan on continuing it. They didn't, I don't believe there was ever the question asked of whether or not she would continue it if she was in China. Which then would of course put her in, directly in a class of people that would be persecuted. Well, that's not a finding that we have made by the IJ, because the extent to which there's persecution and what members of Falun Gong are persecuted is not something we have any findings on, right? No, Your Honor. Is it your position that under this pattern and practice standard, anyone who can show that they're a sincere practitioner of Falun Gong should get asylum? Because of what you're saying is a pattern and practice of persecution in China? Your Honor, if they could show that they're a sincere practitioner of Falun Gong, I believe so. I believe so. All right, I think we have the parties' positions. We're going to take the case under advisement. Thank you very much. Thank you.